IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Case No. 17-cv-02219-RPM-KLM

SHANE SOLOMON,

      Plaintiff,

vs.

TWIN LANDFILL CORPORATION
d/b/a Twin Enviro Services,

      Defendant.

---

## FIRST AMENDED COMPLAINT

---

Plaintiff Shane Solomon, by his attorney Robert M. Liechty of ROBERT M LIECHTY PC, brings his first amended complaint as follows:

1.    Plaintiff Shane Solomon now lives in Colorado Springs, Colorado. Defendant Twin Landfill Corporation does business as Twin Enviro Services.  Its principal place of business is located in Steamboat Springs, Colorado.  Mr. Solomon worked as a general laborer/operator for Twin Enviro at its landfill located in Routt County, Colorado.

2.    Jurisdiction under 28 USC §1331 is proper in this Court because Mr. Solomon brings a claim under the Americans with Disabilities Act, 42 USC §12101 *et seq.*, as amended in 2009.  He filed a charge with the EEOC who gave him a right to sue letter on June 26, 2017.  He has timely filed his complaint in this Court.

3.      In January, 2014, Mr. Solomon had a motorcycle accident resulting in a
traumatic brain injury (TBI).  He has reached maximum medical improvement, given the
treatment that he can afford.  Nonetheless, he still suffers from mental flooding and can
be easily overstimulated, especially if he is confronted with too much negative
information.  He also suffers from anxiety attacks.

4.      His TBI is a recognized disability under the ADA, 42 USC §12102,
because, if untreated, it substantially interferes with his ability to concentrate and to
think.

5.      He returned to work in Missouri six months after the motorcycle accident,
in approximately June, 2014, at a small flooring company that he owned with his partner
in Missouri.  He was able to work without incident.  He left that company on July 28,
2015, to move to the Steamboat Springs area, in Colorado, where defendant is located.

6.      Mr. Solomon's wife, Amber Solomon, began working for Twin Enviro on
August 17, 2015, as a customer service representative.  Twin Enviro recruited Mr.
Solomon through Amber Solomon and he began working at Twin Enviro as a general
laborer on August 28, 2015.  From the beginning, Twin Enviro was informed of Mr.
Solomon's TBI and its symptoms.  Amber told Kat Kelly, the company's acting HR
representative, that her husband was a good worker but, because of his TBI, he
occasionally needed to step away for a few minutes to calm down.

7.      Mr. Solomon did well in his job through October, 2015.  However, he was
upset with the drinking on the job, primarily by Jeff Johnston, the landfill manager.  On
average, Mr. Johnston would give money to Mr. Solomon three of five workdays and

directed him to purchase at least a fifth of Canadian Mist whiskey, 25.6 ounces, or sometimes a "handle" of whiskey, 59.2 ounces.  Occasionally, Mr. Johnston would share the liquor with the employees on the team, Chris Lovelace, a foreman; Mark Sweetman, Mr. Solomon's co-employee; and Mr. Solomon himself.  Generally, the bottle was empty by the end of the day.

8.     Only Mr. Johnston would show signs of inebriation.  He would have red/blurry eyes, slurred speech, and would stumble.  He almost daily operated the machinery while drunk, dropping rocks on his own excavator.  On one occasion, he threatened to drive a dozer off a cliff.  On that day, he drank so much that he had vomit on his shirt and pants while he was driving the company machinery.

9.     While in his inebriated condition, he drove both on County Road 205 and on the company's property in the company's front loaders, graders, and pickups, endangering both his co-employees and the public.  It is a traffic crime under CRS §42-4-1301 to drive while intoxicated on public or on private land.  At least two times per week, Mr. Johnston's gross intoxication resulted in his vehicle not starting because the breathalyzer on his vehicle kept the engine from starting, thus stranding Mr. Johnson overnight at the landfill.

10.     Mr. Solomon complained 3-6 times of Mr. Johnston's drinking and driving to Luke Schneider, the landfill compliance officer, and to Kat Kelly, the company's HR representative.  His complaints became known to CEO Marlin Mullet.  The company did nothing to change Mr. Johnston's conduct.

11.     On January 22, 2016, Mr. Solomon began seeing Dr. Shannon Becker at YampaCare in Craig, Colorado, for anxiety, aggravated by events at work such as the above drinking.  He also began therapy with Mind Springs Health on February 23, 2016. Dr. Becker treated him for anxiety, lack of concentration, and excessive worry, noting in February that the symptoms had been worsening up to that point.  Over these three months, she adjusted his medications, noting that there were problems in determining, and adjusting to, the best medication.

12.     In February, 2016, the company began using a new outside safety consultant, Chris Rainwater, who was retained by the company's insurance broker to reduce risk at work.  Mr. Solomon also raised his concerns with Mr. Rainwater that Mr. Johnston was driving the company vehicles while intoxicated, a violation of Colorado traffic laws.

13.     On or about March 31, 2016, the shop supervisor, Kevin McCune, asked Mr. Solomon to get a screwdriver for purposes of resetting a breaker on a steam cleaner.  Mr. Solomon had no tools of his own and, therefore, he went to Mr. McCune's tool chest to get the screwdriver.  Mr. McCune slapped Mr. Solomon's hand as he was pulling the tool drawer open to take a screwdriver out of it.  Mr. McCune reprimanded Mr. Solomon for attempting to touch his tools and "talked down" to him the rest of the day.

14.     Because of Mr. Solomon's mental condition, he reacted extremely adversely to this action.  Later that day, Mr. Solomon had his first anxiety attack,

suffering from blurred vision, tunnel vision, and lack of peripheral vision.  He called his wife, Amber, who told him to leave work.

15.     On March 31, Amber spoke to Kat Kelly, defendant's HR representative, who sent an e-mail to CEO Marlin Mullet, asking Mr. Mullet "to talk with Kevin [McCune] to explain Shane's TBI."  Mr. Mullet forwarded this e-mail to Mr. McCune, who wrote back that "I have zero tolerance for lazy people and dangerous to all [*sic*].  Are we a rehab center now?"  For the next three weeks, management avoided contact with Mr. Solomon.  Mr. Solomon had no incidents at work over these three weeks and completed his work satisfactorily.

16.     Mr. Solomon's medications began working better and, on April 13, 2016, his provider at Mind Springs Health, William Philip, noted that Mr. Solomon was "a bit more calmer [*sic*]."

17.     In late March or early April, 2016, Mr. Rainwater talked to Mr. Mullet about ADA accommodations the company needed to make for Mr. Solomon's brain injury. Specifically, Mr. Rainwater recommended putting Mr. Solomon on different equipment that would not jar Mr. Solomon's head as much.

18.     Mr. Mullet dismissed this suggestion out of hand and said that "We don't bother with that shit."  He said that he was going to terminate Mr. Solomon because he was causing trouble by his complaints, including his complaints of employee drinking. Mr. Rainwater specifically told Mr. Mullet not to terminate Mr. Solomon because that would be a clear violation of the ADA and he told Mr. Mullet what the ADA required.  Mr.

Mullet said that "We don't care about government rules.  We are tough guys and run this operation like tough guys."

20.    On April 20, 2016, Mr. Johnston told Mr. Solomon that it would be best if he did not return to work for "safety reasons, because I can't really say medical reasons."  When he mentioned the phrases "safety reasons" and "medical reasons," he made "air quotes" with his fingers, indicating that the medical reason was the real reason for his termination.

20.    The termination caused Mr. Solomon to suffer extreme mental distress. He was confused by the reasons for his termination and was extremely upset at the lack of justification for it.  He screamed at his wife for months after the termination that it was unfair and that it upset him terribly.

### First Claim

21.    Twin Enviro terminated Mr. Solomon because it did not want to accommodate his TBI or comply with ADA rules.  This violates 42 USC §12112(a).

22.    Mr. Solomon has suffered economic and psychological losses, inconvenience, and loss of enjoyment of life and is entitled to recovery under 42 USC §12117(a), which incorporates 42 USC §2000e-5(f), (g), and (k), and 42 USC §1981(a). He is also entitled to his attorney's fees under 42 USC §12205.

23.    Twin Enviro's violation of the ADA was done with a reckless indifference to the rights of Mr. Solomon, subjecting Twin Enviro to punitive damages.

***Second Claim***

24.     It is Colorado's public policy that an employee cannot be retaliated against for reporting violations of Colorado traffic laws by employees while the employees are on the job.

25.     Twin Enviro was aware, or reasonably should have been aware, that Mr. Solomon was exercising his right to complain of the above traffic violations that Mr. Johnston was committing.

26.     Twin Enviro terminated Mr. Solomon in part because he had reported Mr. Johnston's traffic violations.  This violates Colorado's public policy for which Mr. Solomon may recover through a claim of wrongful termination in violation of Colorado's public policy.

27.     Mr. Solomon is entitled to recover under this claim his lost wages and compensatory damages set forth in ¶ 20 above.

WHEREFORE, plaintiff Shane Solomon respectfully requests that this Court enter judgment in his favor and for interest, costs, attorney's fees, and such other relief as this Court may deem proper.

Plaintiff requests trial to a jury.

Respectfully submitted this March 12, 2018.

By:   s/    *Robert M. Liechty*
              Robert M. Liechty
              ROBERT M LIECHTY PC
              5105 DTC Parkway, Suite 475
              Greenwood Village, Colorado 80111
              Tel: (303) 830-0500
              Fax: (303) 860-7855
              Email:  rliechty@crossliechty.com
              ATTORNEY FOR PLAINTIFF

## CERTIFICATE OF SERVICE

I hereby certify that on this March 12, 2018, a true and correct copy of the above and foregoing **FIRST AMENDED COMPLAINT** was, unless otherwise indicated, filed electronically with the Court who provides notice to the following:

Elizabeth I. Kiovsky
Kiovsky DuWaldt, LLC
2820 Welton St.
Denver, CO 80205
beth@kdemployment.law.com

                    *Original Duly Signed at Offices of Robert M Liechty PC*


                    s/    *Linda L. DeVico*